CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3918
FAX: (510) 637-3724
ivana.djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL SIMON,<br><br>Defendant. | CASE NO. 26-CR-256 YGR<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: October 1, 2026<br>Time: 9:30 a.m.<br>Judge: Hon. Yvonne Gonzalez Rogers |

## INTRODUCTION

Between at least June 2023 and September 2025, Michael Simon conspired with others to engage in sex trafficking on the Oakland Blade in Oakland, California, and elsewhere. For several years, the Defendant was a violent pimps on the Oakland Blade. He coerced multiple victims to engage in prostitution and commercial sex acts. The victims were advertised online and solicited customers for commercial sex acts. The victims were not allowed to keep the money paid to them. The victims were expected to engage in commercial sex work when they were told, and did not have say in their hours, their fees, or the location in which they were to perform commercial sex acts. When a victim refused to engage in commercial sex work as instructed or failed to hand over money paid for sex work, the Defendant would physically punish them for non-compliance by assaulting them.

The Defendant also has a serious and violent criminal history, including multiple felony convictions for firearm offenses, pimping, selling drugs, and evading law enforcement. Over the past two decades, he has been arrested over a dozen times for everything from battery to burglary.

The Defendant is, however, now also willing to take responsibility and agree to a substantial prison term—his most significant to date. For the reasons set forth below, the parties jointly recommend that the Court sentence the Defendant to 96 months of imprisonment, and a five-year term of supervised release, with the conditions recommended by probation and set forth in the plea agreement.

## BACKGROUND

### I. Offense Conduct – The Defendant was a Violent Pimp on the Oakland Blade

Between about June 2023 and about September 2025, the Defendant conspired with others to commit sex trafficking. The investigation into the Defendant began in June 2023, when an adult woman called the Oakland Police Department ("OPD") and asked for help in leaving her pimp, later identified as Michael Simon, who coerced her into prostitution on the Oakland Blade. Presentence Investigation Report ("PSR") ¶ 8. The woman reported that the Defendant forced her to engage in sex acts for money. He tracked her whereabouts on his phone and always carried a gun. *Id.* ¶ 9.

A "blade" is an area where commercial sex work occurs, and the most active blade in Oakland is located in and around International Boulevard, between approximately 5th Avenue and 23rd Avenue. The Oakland Blade is known throughout the Bay Area for prostitution activity and as a center of violent crime. *Id.* ¶ 7.

Thereafter, OPD officers repeatedly encountered the Defendant on the Oakland Blade, especially during August 2024. They observed him dropping off women who appeared to be prostitutes and observed him on surveillance footage with a firearm. They tried to stop him for traffic infractions, but he evaded them repeatedly. PSR ¶¶ 10 – 11.

In late 2024, OPD and the Federal Bureau of Investigation ("FBI") conducted searches of several of the Defendant's social media accounts. Law enforcement located conversations with women who appeared to be working as prostitutes discussing the Defendant beating them and demanding money.

Several text conversations discussed the women engaging in sex work on the Oakland Blade and owing the Defendant money. PSR ¶¶ 12 – 13.

On December 17, 2024, pursuant to a state search and arrest warrant, the Defendant was arrested at the Garden Motel in Gardena, California. Just prior to the arrest, agents observed two adult females, Adult Victim 1 ("AV1") and Adult Victim 2 ("AV2"), exit the Defendant's room at the Motel. PSR ¶ 14. A firearm and the Defendant's phone were recovered during the search of the motel room. *Id.* ¶ 15. A review of the cell phone pursuant to a search warrant, revealed messages, images, and other data, that suggested the Defendant was engaged in the sex trafficking of multiple women, including AV1 and AV2. *Id.*

Text conversations between the Defendant's cell phone and the phone number for AV1 began on August 4, 2024, and continued until November 21, 2024 PSR ¶ 16. Most of the discussions involved AV1 working as a prostitute at the Defendant's direction. For example, on August 9, 2024, AV1 texted the Defendant, "I have another date for 300. He said be ready at 1130. Maybe [another victim] could take it. Because he just got paid I want all I can get it. Or I'm a catch the other date ima just tell him I have to get condoms and send him to the other room . . . But lmk how you wanna do it." The Defendant responded, "Finesse speed time." *Id.* Many of the texts indicate the Defendant used force, fraud, or coercion to induce AV1 to work as a prostitute. For example, on November 19, 2024, AV1 texted the Defendant, "All you do is make fun of me ignore me and beat me I go outside and make money you . . . scream in my ear . . . I'm just gonna get treated bad no matter what…" *Id.* ¶ 17.

Text conversations between Simon's cell phone and the phone number for AV2 began on September 2, 2024, and concluded on October 31, 2024. PSR ¶ 18. Most of the messages were related to AV2's prostitution at the Defendant's direction. For example, on September 2, 2024, AV2 asked the Defendant if she should post an ad online, and he said "yes." *Id.* The next day, AV2 asked the Defendant for instructions for what motel room to go to in order to do sex work, and he provided the

details. On September 7, 2024, the Defendant texted AV2, "You both y'all will not be coming in until I get $650 a piece . . ." Later that same day, AV2 texted the Defendant, " . . . you hit me in my face in my head and my head hurts I told you about my concussion now I'm feeling dizzy . . . " PSR ¶ 18.

It is clear from the communications on the Defendant's phone and in his social media, that he coerced women into engaging in sex work by assaulting and threatening them, and collecting whatever money they made from sex work. It is clear that the Defendant worked with other unindicted co-conspirators to arrange for hotel and travel bookings and to post advertisements for the victims to engage in commercial sex acts.

Perhaps most concerning is that there is some evidence that the Defendant also trafficked a minor victim. On the Defendant's phone, law enforcement located text messages between July and November 2024, with an individual they later identified as a minor victim. The minor victim and the Defendant texted about her engaging in commercial sex acts, her getting paid for that activity, and the Defendant beating her in relation to that activity. PSR ¶¶ 19 – 26. Law enforcement recovered child sexual abuse material from the Defendant's phone depicting the minor victim. *Id.* ¶ 25.

After his December 2024 arrest in Gardena, the Defendant returned to Oakland and continued his sex trafficking activity. He was finally arrested in September 2025 on a federal Complaint.

**II. Criminal History**

The Defendant has a lengthy and violent criminal history. In 2025, the Defendant was convicted of evading law enforcement and wrong way driving for an incident that occurred in 2024. He was sentenced to 324 days in jail and two years of probation. PSR ¶ 66.

In 2022, the Defendant was convicted of two counts of evading a peace officer and disregarding public safety. He was sentenced to 214 days in jail and two years of probation. *Id.* ¶ 63. These convictions related to 2020 and 2021 conduct in Los Angeles, California, on one of the "blades" in that city. *Id.* ¶ 64. Notably, the Defendant completed a federal term of supervised release in 2019, but appears to have continued his criminal conduct immediately thereafter. *Id.* ¶ 62.

In 2022, the Defendant incurred a felony pandering / pimping conviction and was sentenced to one day in jail and two years of probation. PSR ¶ 65. This conviction related to a 2021 incident at an Oakland Airport hotel in which the Defendant coerced a woman to engage in sex work. *Id.*

In 2011, the Defendant incurred a federal felon in possession of ammunition conviction and was sentenced to 46 months in jail and three years' custody. *Id.* ¶ 62. After his release, the Defendant repeatedly violated the conditions of his supervised release, and his supervision was revoked twice. On October 19, 2016, the defendant was sentenced to one day in custody and 24 further months of supervised release. On April 7, 2017, the defendant's supervised release was revoked again, and he was sentenced to 10 months of custody followed by 24 months of supervised release. His supervision did not terminate until 2019. *Id.*

In 2009 the Defendant was convicted of transporting and selling narcotics. He was sentenced to 128 days in jail and five years' probation. PSR ¶ 59. He was also convicted on a separate count of possessing a controlled substance and sentenced to three years' probation. *Id.* ¶ 62. In 2009, the Defendant also incurred a misdemeanor conviction for obstructing a public officer. He was sentenced to 20 days in jail and 18 months' probation. *Id.* ¶ 58.

In 2008, the Defendant was convicted of second degree burglary and sentenced to 120 days in jail. PSR ¶ 60. In 2008, he was also convicted of possessing crack cocaine for sale. He was sentenced to 36 days in jail and three years of probation. *Id.* ¶ 56. In 2007, the Defendant was convicted of possessing a controlled substance and sentenced to three years of probation. *Id.* ¶ 57.

Between his convictions and prison sentences, the Defendant has been arrested over a dozen times in the past twenty years, for everything from drug dealing, gambling, and battery, to burglary, child cruelty, and pandering / pimping. PSR ¶¶ 70 – 85 . The Defendant has been on some form of supervision for the better part of two decades and has been undeterred from engaging in violent and dangerous criminal conduct.

## III. Procedural Posture

On September 19, 2025, the government charged the Defendant in a criminal Complaint with Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Dkt. No. 1. On May 26, 2026, the Defendant was charged in a one-count Information with Conspiracy to Commit Human

Trafficking by Force, Fraud, or Coercion in violation of 18 U.S.C. § 1594(c). Dkt. No. 37. On July 16, 2026, the Defendant pled guilty to Count One of the Information pursuant to a plea agreement. Dkt. Nos. 42, 43. Sentencing is set for October 1, 2026.

## ARGUMENT

### I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### II. Sentencing Guidelines Calculation

According to the PSR, the Sentencing Guidelines calculations for Defendant's offense level are as follows:

| | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | U.S.S.G. § 2G1.1(a)(1) | 34 |
| Grouping | USSG §3D1.4 | +2 |
| Acceptance of responsibility | § 3E1.1 | -3 |
| Total offense level | | 33 |

PSR ¶¶ 31–53.

The Probation Officer concluded that Defendant's criminal history score is 9, and he therefore falls into Criminal History Category IV. PSR ¶¶ 67–69. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 33 and Criminal History Category IV is 188 – 235 months of incarceration. *Id.* ¶ 104. The government agrees that this is the correct guideline calculation.

The parties in their Plea Agreement did not include a two-point increase for grouping analysis. *See* Plea Agreement, Dkt. No. 43. Accordingly, the plea agreement provides for a total offense level of 31. Under the parties' offense level of 31 and CHC IV, the guideline range would be 151–188.

In accordance with the plea agreement, the parties jointly recommend 96 months in custody and five years of supervised release.

## III. The United States' Sentencing Recommendation

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 96 months imprisonment—to be followed by a five-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide deterrence, but also to account for relevant mitigating factors.

As discussed above, the Defendant's criminal conduct was serious and violent. The Defendant was one of the most violent pimps on the Oakland Blade for years. He conspired with others to sex traffic women—he coerced women into engaging in sex work and controlled their lives. When a victim refused to engage in commercial sex work as instructed or failed to hand over money paid for sex work, the Defendant would physically punish them for non-compliance by physically assaulting them.

In addition, for characteristics of the Defendant, specific deterrence, and to protect the public from further crimes of the defendant, it is notable that the Defendant has a lengthy criminal history including for pandering and pimping, and for firearm offenses. He has engaged in unabated criminal conduct for two decades. Many of his convictions and arrests occurred while he was on some form of supervision. *See* U.S.S.G. § 3553(a)(2)(C)–(D).

The eight years' custodial term recommended by the parties is a significant and lengthy sentence. The Defendant's longest sentence to date was half that—this will be his longest sentence. And during

those eight years the Defendant will not be able to traffic and terrorize women on the Oakland Blade. Such a substantial sentence will promote respect for the law and afford general deterrence. *See* U.S.S.G. § 3553(a)(1), (a)(2)(A)–(B).

Probation's recommendation is slightly higher than the parties' joint recommendation, *see* PSR at Sentencing Recommendation. This reflects the serious nature of the offense. However, sex trafficking cases are difficult and resource intense to prosecute—victims and witnesses are difficult to obtain and maintain, and trials are grueling for victims with uncertain outcome. Here, the Defendant is willing to take responsibility for his criminal conduct.

Oakland will be safer for the next eight years with the Defendant in custody, and the government is optimistic that this case will serve as an inflection point for the Defendant, so that he will productively rejoin society after his term.

**CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Defendant to 96 months in prison followed by a five-year term of supervised release.

DATED: September 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/*
IVANA DJAK
Assistant United States Attorney